**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN TRUONG,<br><br>  Plaintiff,<br><br>v.<br><br>ALLSTATE MOTOR CLUB, INC.,<br><br>  Defendant. | Civil Action No.: 1:21-cv-05637<br><br>Hon. Gary Feinerman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ALLSTATE MOTOR CLUB, INC.'S
<u>RULE 56 MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Allstate Motor Club, Inc. ("Allstate" or "Defendant"), by and through its attorneys Eversheds Sutherland (US) LLP, for its memorandum in support of its motion for summary judgment on Plaintiff Kevin Truong's ("Plaintiff") Complaint, states as follows:

**I. PRELIMINARY STATEMENT**

Plaintiff alleges that he received "numerous text message[s] for the purpose of encouraging the purchase of roadside assistance services." Compl. ¶ 11, (ECF No. 1). Plaintiff alleges that these messages were sent without his consent while his number was on the federal Do Not Call registry. He further alleges that some of the messages were sent before 8 a.m. or after 9 p.m., and that Allstate did not have internal Do Not Call protections when it sent the messages. Based on these allegations, Plaintiff brings three claims for violations of the Telephone Consumer Protection Act ("TCPA").

Two of those claims can survive only if the messages in question were "solicitations," and the third claim can survive only if the messages in question constitute "telemarketing." Therefore, Plaintiff must ultimately prove that the texts from Allstate were "solicitations" and/or

1

"telemarketing," and specifically, that they were sent "for the purpose of" encouraging a purchase of goods or services. Yet there is no material question of fact at issue here: the messages received by Plaintiff were test or dummy messages not intended for him (or anyone else) and thus constitute neither solicitations nor telemarketing.

Specifically, the messages were not – and could not have been – solicitations or made for the purpose of telemarketing because the messages were generated within Allstate's testing platform used by Allstate engineers to test and hone Allstate's roadside services systems and were not intended to be sent to an actual phone number or mobile device. The engineers used an entirely sequential "dummy" phone number during testing, to mimic the back-and-forth exchanges that Allstate would have with a customer following an actual request for roadside services.

Unfortunately, some messages that were generated within that platform were inadvertently transmitted to Plaintiff's phone number, which happens to be entirely sequential but for the first number. In short, the messages were never intended to be transmitted to *anyone*, and the so-called service providers identified in the text messages were *not even real service providers*. Prior to Plaintiff filing the Complaint, Allstate did not even know that any messages to the "dummy" number had escaped the testing system or that the "dummy" number was a real, working phone number. As a matter of law (and common sense), and as more fully discussed below, these messages cannot qualify as solicitations or telemarketing. Because the messages were not solicitations or telemarketing, Plaintiff does not have a viable claim under the TCPA. Accordingly, the Court should dismiss Plaintiff's three TCPA claims and with them the entire Complaint.[1]

---

[1] Allstate also takes the position that the content of the messages was entirely informational in nature and thus could not give rise to any of the claims alleged in Plaintiff's Complaint. Allstate expressly reserves the right to move for summary judgment as to that issue at the close of discovery, if necessary.

**II.     FACTS**

Every fact relevant to this motion as set forth below is undisputed.

The Allstate Roadside Services app allows a customer to track the location of a roadside services vehicle after the customer has requested roadside service, such as when they are stranded on the side of a road with a flat tire. Statement of Undisputed Facts ("SOF") ¶ 1. In the normal course, messages provide updates to customers' requests for roadside services, links to web pages where customers can view the status of a roadside services vehicle, or links to download the free Roadside Services app that in turn would allow customers to view the status of a roadside services vehicle that the customer had already requested. *Id.* ¶¶ 2-3.

Allstate consistently hones its roadside services platform, including by testing the delivery system for its communications with customers. *Id.* ¶¶ 4, 6. Among other things, Allstate testing engineers will replicate an interaction between a subscriber and the roadside services platform by using fake or "dummy" numbers to test in what is intended to be a closed, non-public testing platform that the right actions are occurring as designed and as required when a text is sent by a subscriber to Allstate Roadside Assistance. *Id.* ¶¶ 4-6. Allstate did not expect that messages sent to a dummy number would or could transmit to an actual number outside of the testing platform. *Id.*

At some point before any texts were transmitted to Plaintiff, Allstate testing engineers began using a sequential number as a dummy text message recipient to test its platform. *Id.* ¶¶ 6-9. As it turns out, one of the test or dummy numbers used by the engineers is Plaintiff's number, which is entirely sequential but for the first digit. *Id.* ¶ 7. Some of the test messages to the sequential dummy number apparently slipped through the testing platform and were unintentionally transmitted to Plaintiff. *Id.* The entire Complaint rests on the false assumption that Allstate sent

3

text messages to Plaintiff "for the purpose of encouraging the purchase of roadside assistance services." Compl. ¶ 11. In fact, Allstate did not send *any* texts to Plaintiff for such purposes. SOF ¶¶ 13-15. Every single text that was apparently transmitted to Plaintiff was a test or "dummy" message generated for the sole purpose of testing the delivery platform for Allstate's Roadside Assistance app. *Id.* ¶ 15.

During its investigation into the allegations in Plaintiff's Complaint, Allstate identified the dates, times, short codes (where applicable), and content of all text messages that may have been transmitted outside of the testing platform. *Id.* ¶¶ 10, 16. Allstate produced a log showing the content of every message that could have potentially transmitted to Plaintiff's phone, understanding that many of those messages may not have been actually transmitted. *Id.* ¶ 17. Significantly, the records of texts that were potentially transmitted to Plaintiff's number were all obtained from Allstate's testing platform systems or databases, not from a marketing or sales call log or database, for example. *Id.* ¶¶ 11-13. Moreover, Plaintiff's number does not appear in any Allstate system or database except for those associated with and used for testing. *Id.* ¶ 13. Allstate has no record of the Number outside of the testing environment. *Id.* ¶ 14.

Some of the messages (and landing pages accessed through links in the messages) purported to show the status of local service providers that were "en route" to the disabled vehicle that was the subject of the roadside services request. *Id.* ¶¶ 17-18. In the case of the texts to Plaintiff's phone number, there was no request for roadside services and the local service providers identified in the texts were not actual companies or entities. *Id.* ¶ 18. As explained, the messages were triggered by Allstate engineers testing the platform; the messages were not responding to a real request but instead a "dummy" request. *Id.* Because these texts at issue were used to test the Allstate Roadside Assistance mobile app and were not intended to be sent to a real number, the

local service providers mentioned on the landing page of any URL contained in a text were "dummy" (and not real) service providers: fake service providers invented purely to fill the space in the landing page where a service provider would normally be identified. *Id.* In other words, the test text messages and links showed tow truck companies that do not exist. *Id.*

### III. ARGUMENT

#### a. Standard of Review.

The purpose of a motion for summary judgment is to look beyond the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Taylor v. Catholic Charities of the Archdiocese of Chi.*, No. 17 CV 2380, 2019 U.S. Dist. LEXIS 40234, at *14 (N.D. Ill. Mar. 13, 2019) (citing *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A court should grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Abdollahzadeh v. Mandarich Law Grp.*, LLP, 922 F.3d 810, 814 (7th Cir. 2019); *Selective Ins. Co. v. Target Corp.*, 845 F.3d 263, 265-66 (7th Cir. 2016). When considering a motion for summary judgment, a court must construe evidence and draw all reasonable inferences in favor of the non-moving party. *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 824 F.3d 645, 647-48 (7th Cir. 2016); *Kilgore v. FedEx Freight*, 458 F. Supp. 3d 973, 977 (N.D. Ill. 2020). A plaintiff may not rely on the allegations contained in the pleadings, however, and instead must offer specific evidence demonstrating a genuine factual issue for trial. *Rutledge v. City of Chicago*, 652 F. A'ppx. 466, 468 (7th Cir. 2016); *Devco v. T10 Meltel, LLC*, 237 F. Supp. 3d 804, 807 (N.D. Ill. 2017).

A court reviewing a motion for summary judgment can look to the evidence cited in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

### b. The Texts Do Not and Cannot Satisfy the Definitions of Solicitation and Telemarketing.

Plaintiff brings three claims under 47 U.S.C. § 227(c) for violations of the TCPA. Counts I and II arise from allegations that Allstate violated 47 C.F.R. § 64.1200(c)(1) & (c)(2), respectively. Compl. ¶¶ 22, 25. Section 64(c) imposes restrictions on entities "initiat[ing] telephone solicitation[s]." "Telephone solicitation" is defined as "the initiation of a telephone call or message *for the purpose of* encouraging the purchase of rental of, or investment in, property, goods, or services." *Id.* § 64.1200(f)(15) (emphasis added).

Count III (Compl. ¶ 28) arises from allegations that Allstate violated 47 C.F.R. § 64.1200(d)(2), which states: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id.* § 64.1200(d). "Telemarketing" is defined as "the initiation of a telephone call or message *for the purpose of* encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(13) (emphasis added).

Allstate is not aware of cases where a defendant was performing technical work "for the purpose of" testing its system, resulting in text messages or calls being sent inadvertently. There are many cases, however, where courts have considered whether a Defendant placed calls or texts "for the purpose of" telemarketing or soliciting. Based on these cases, and a plain reading of the statute, texts like the ones at issue in this case could not give rise to TCPA claims based on violations of the DNC regulations. *See, e.g., Spiegel v. Reynolds*, No. 15 C 8504, 2017 U.S. Dist.

LEXIS 167777, at *13-14 (N.D. Ill. Oct. 11, 2017) (dismissing the complaint because "the language of the statute is clear" on the question of what constitutes telemarketing); *Norman v. N. Ill. Gas Co.*, No. 13 cv 3465, 2013 U.S. Dist. LEXIS 152470, at *6-9 (N.D. Ill. Oct. 23, 2013) (dismissing complaint where the "most logical inference of the intended purpose of the call" was that it was not a solicitation); *Alleman v. Yellowbook*, No. 12-cv-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212, at *16-18 (S.D. Ill. Sept. 6, 2013) (finding alleged calls exempt from TCPA); *see also Moore v. Pro Custom Solar LLC*, No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347, at *7 (N.D. Ill. Apr. 12, 2022) ("It is the purpose behind a call, not what happens during the call, that governs for TCPA analysis of solicitation.") (citations omitted).

Plaintiff must ultimately prove that the texts from Allstate were "solicitations" and/or "telemarketing," specifically, that they were sent "for the purpose of" encouraging a purchase of goods or services. As explained, the messages were created and sent within a testing platform, did not identify actual service providers and were never intended to be sent to anyone. Allstate did not even know that some of the test messages had been transmitted outside of its testing platform until Plaintiff filed his Complaint, and has no record of Plaintiff's phone number outside of its testing systems. Based on a plain reading of the statutory language, the messages cannot qualify as solicitations or marketing because they were plainly not made "for the purpose of encouraging the purchase or rental of, or investment in" anything at all. 47 C.F.R. §§ 64.1200(c), (f). Accordingly, Plaintiff will be unable to prove any of his claims, and his Complaint should be dismissed.

IV. **CONCLUSION**

For the reasons set forth above, and supported by Allstate's Rule 56 Statement of Undisputed Facts, Plaintiff will not be able to show that he received any messages that qualify as

solicitations or telemarketing. Accordingly, Plaintiff's claims under the Telephone Consumer Protection Act fail and his Complaint should be dismissed.

Dated: August 5, 2022

                                      Respectfully submitted,

                                      Allstate Motor Club, Inc.

/s/*Francis X. Nolan, IV*
Francis X. Nolan, IV (Bar No. 4711628)
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of the Americas, 40th Fl.
New York, NY 10036-7703
Telephone: 212-389-5083
Facsimile: 212-389-5099
Email: franknolan@eversheds-sutherland.com

Lewis S. Wiener (Bar No. 414479)
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC 20001-3980
Telephone: 202-383-0140
Facsimile: 202-637-3593
Email: lewiswiener@eversheds-sutherland.com

Timothy J. McCaffrey (Bar No. 6229804)
EVERSHEDS SUTHERLAND (US) LLP
900 N. Michigan Avenue, Suite 1000
Chicago, IL 60611
Telephone: 312-535-4445
Facsimile: 312-724-9322
Email: timmcaffrey@eversheds-sutherland.com